| | |
|---|---|
| JOSHUA ANTHONY, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:24-cv-01252 |
| | ) |
| MEHARRY MEDICAL COLLEGE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Joshua Anthony ("Dr. Anthony") brings this Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. case against Meharry Medical College ("Meharry") and Lloyda B. Williamson ("Dr. Williamson") for alleged discriminatory and retaliatory conduct during and subsequent to his medical residency at Meharry.[1]  Before the Court are Meharry's Motion to Dismiss (Doc. No. 21) and Motion to Strike (Doc. No. 25), both of which have been fully briefed and are ripe for review (Doc. Nos. 21–22, 24, 26–29).  For the following reasons, the Court will grant in part and deny in part the Motion to Dismiss (Doc. No. 21), and will deny the Motion to Strike (Doc. No. 25).[2]

---

[1] In the Amended Complaint (Doc. No. 16), Dr. Anthony does not name Dr. Williamson as a defendant, nor does he bring any claims against her.  Despite this, Dr. Williamson remains in this case given Dr. Anthony named her as a defendant in the original Complaint.  (See Doc. No. 1). Because the operative Complaint is devoid of any indication that Dr. Williamson is properly named in this matter, the Court will dismiss Dr. Williamson sua sponte under Rule 21 for misjoinder. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); see Letherer v. Alger Grp., 328 F.3d 262, 267 (6th Cir. 2003), overruled on other grounds by Blackburn v. Oaktree Cap. Mgmt., 511 F.3d 633 (6th Cir. 2008).

[2] Meharry's Motion to Strike (Doc. No. 25) is improper.  The email correspondence Meharry requests be stricken, Exhibit 1 to Dr. Anthony's response, is not a "pleading" that may be subject to a motion to strike under Rule 12(f).  See Fed. R. Civ. P. 12(f); see also Fed. R. Civ. P. 7(a)

I.  **BACKGROUND AND FACTUAL ALLEGATIONS**[3]

Meharry maintains a residency training program. (Doc. No. 16 ¶ 10). Dr. Anthony, who is disabled in a manner not specifically described, began his residency at Meharry in the Department of Psychiatry and Behavioral Sciences in July 2019. (Id. ¶ 11). After Dr. Anthony failed to pass the Step 3 examination, Meharry issued a notice of non-renewal of his residency contract on April 15, 2021. (Id.). Shortly thereafter, in August 2021, Dr. Anthony filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Meharry discriminated and retaliated against him because of his disability. (Id. ¶ 12).

Two months later, Dr. Anthony emailed Dr. Williamson, Meharry's Chair of the Psychiatry Department, requesting a reference letter on his behalf. (Id. ¶ 13). Dr. Williamson declined, informing Dr. Anthony that she would not provide a neutral reference letter for him, nor would she speak on his behalf due to anticipated litigation. (Id.). That anticipated litigation materialized almost a year later when Dr. Anthony filed a lawsuit against Meharry on September 12, 2022. (Id. ¶¶ 13, 15; see Case No. 3:22-cv-00704).

On January 23, 2023, Dr. Anthony passed his Step 3 exam. (Id. ¶ 16). On or around March 16, 2023, Dr. Anthony informed Meharry and re-applied to its residency program. (Id. ¶ 17).

---

(defining "pleadings" to include "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."). Given this, Meharry's Motion (Doc. No. 25) will be denied. See Fox v. Michigan State Police Dep't, 173 F. App'x 372, 375 (6th Cir. 2006) (upholding the district court's denial of motion to strike under Rule 12(f) where it "correctly decided not to strike the exhibits attached to defendants' dispositive motion"). In any event, the Court will not consider Exhibit 1 to Dr. Anthony's response because the email correspondence contained therein was not referred to in the Amended Complaint, is not central to Dr. Anthony's claims, and is not otherwise judicially noticeable. See Armengau v. Cline, 7 F. App'x 336, 344 (6th Cir. 2001).

[3] The Court draws the facts in this section from the Amended Complaint and assumes the truth of those facts for purposes of ruling on the instant motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

2

Despite Dr. Anthony's passing Step 3 and Meharry's history and pattern of reinstating individuals within its Psychiatry Department residency program who were initially removed for failing Step 3, Meharry refused to reinstate him. (Id. ¶¶ 16–17).

Meanwhile, around the same time, Dr. Anthony also applied for an open third year residency position with Harlem Hospital in New York ("Harlem Hospital"). (Id. ¶ 18). Harlem Hospital discussed Dr. Anthony's application with Dr. Williamson, who, in speaking with Harlem Hospital personnel, made false, negative statements about Dr. Anthony's professionalism and accountability. (Id. ¶¶ 18–20). Because of these statements, Harlem Hospital withdrew its interest in engaging Dr. Anthony as a candidate for a position within its residency program. (Id. ¶ 23).

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept all the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). And "[w]hile the complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" or "a formulaic recitation of a cause of action's elements[.]" Blackwell, 979 F.3d at 524 (quotations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

3

Moreover, in evaluating a motion to dismiss, the Court may consider the complaint and the exhibits attached, Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008), as well as "documents attached to a motion to dismiss" that are "referred to in a complaint and [are] central to the claim," "public records, [and] matters of which a court may take judicial notice[.]" Armengau, 7 F. App'x at 344.

## III. ANALYSIS

Meharry moves to dismiss both Dr. Anthony's ADA disability discrimination and retaliation claims on the basis that neither state a claim upon which relief can be granted. The Court will address Meharry's challenges to each claim below.

1. EEOC Charge

Meharry's first argument for dismissal pertains to the proper scope of Dr. Anthony's case, given the limitations of his EEOC charge. As a precondition to Dr. Anthony's suit asserting violations of the ADA, he first had to file a charge of discrimination with the EEOC within 300 days of the alleged discrimination.[4] See 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5(e)(1); Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 309 (6th Cir. 2000). "The 300-day time period begins to run when the employee is notified of the alleged discriminatory act." Caruso v. Alltel Corp., 113 F. App'x 90, 91 (6th Cir. 2004) (citing Amini v. Oberlin Coll., 259 F.3d 493, 498–500 (6th Cir. 2001)); see EEOC v. United Parcel Serv., Inc., 249 F.3d 557, 561–62 (6th Cir. 2001) (The limitations period in 42 U.S.C. 2000e-5(e)(1) "does not begin to run. . . until an employer makes and communicates a final decision to the employee.") (citing Del. State Coll. v.

---

[4] To have an actionable ADA claim, an employee must also receive a right-to-sue letter. Parry, 236 F.3d at 309. Because Meharry does not contest Dr. Anthony's allegation that he received that letter on August 15, 2024, the Court need not address this matter further. See id.; see also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (EEOC filing requirements are "subject to waiver, estoppel, and equitable tolling").

4

Ricks, 449 U.S. 250, 258 (1980)). "A claim is time barred if it is not filed within these time limits." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). Dr. Anthony filed his EEOC charge on January 11, 2024, (Doc. No. 22-1 at 2–3), rendering any conduct before March 17, 2023—300 days prior to his filing the charge—unactionable. See Armengau, 7 F. App'x at 344 (EEOC charge, which is mentioned in the Amended Complaint and is center to Dr. Anthony's claims, is judicially noticeable).

Based on this limitation, Meharry argues all of Dr. Anthony's allegations from March 16, 2023 and prior, including Meharry's decision to decline Dr. Anthony's reapplication for residency, cannot serve as the basis of his claims because they occurred outside the 300-day window. (Doc. No. 22 at 6–7). Dr. Anthony disagrees, arguing Meharry's refusal to readmit Dr. Anthony into its residency program after he passed Step 3 falls within the EEOC statutory time frame because: (1) his allegation that Meharry's decision to not reinstate him as a resident "on or around" March 16, 2023 is sufficient to make this conduct fall within the 300-day EEOC charge window; and (2) there is email correspondence with a Meharry physician demonstrating as much. (Doc. No. 24 at 6–7). While Dr. Anthony's invocation of email correspondence with a Meharry physician is inappropriate for this stage of litigation because those communications are not judicially noticeable, Armengau, 7 F. App'x at 344, the Court nevertheless finds both parties' remaining arguments have merit.

Meharry is correct, and Dr. Anthony does not contest, that many of his claims are not actionable because they occurred prior to 300-day EEOC filing window starting on March 17, 2023. Morgan, 536 U.S. at 109. These events include: allegations pertaining to Meharry's nonrenewal notification to Dr. Anthony (Doc. No. 16 ¶ 11); Dr. Williamson denying Dr. Anthony's request for a reference letter (id. ¶ 13); and events pertaining to the NLRB investigation, if any (id.

¶ 14). Because Dr. Anthony cannot base his claims on those time-barred allegations, the Amended Complaint is limited to two sets of events: (1) Meharry's decision to not reinstate Dr. Anthony as a resident after he passed Step 3 (id. ¶ 17); and (2) Dr. Williamson's communications with the Harlem Hospital residency program about Dr. Anthony's suitability for its residency program (id. ¶ 18). While the latter set of allegations undisputedly falls within the 300-day statutory time frame, as they occurred in June or July 2023 (id.), the allegations pertaining to Meharry's refusal to reinstate Dr. Anthony is a closer call.

There, Dr. Anthony alleges that he informed Meharry "[o]n or around March 16, 2023" that he passed Step 3 and reapplied for its residency program, and Meharry subsequently rejected this reapplication. (Id. ¶ 16). Dr. Anthony stated the same in his EEOC charge. (Doc. No. 22-1 at 2 ("On or about March 16, 2023, [Dr. Anthony] informed Meharry [that he passed Step 3]. [Dr. Anthony] also re-applied to [Meharry]. [Meharry] refused to reinstate [Dr. Anthony] as it had done with other non-disabled individuals.")). Meharry contends that, based on this allegation, all of the following occurred on March 16, 2023: Dr. Anthony informing Meharry he passed Step 3, Dr. Anthony reapplying for residency at Meharry, and Meharry rejecting Dr. Anthony's application. However, to read the allegations so narrowly would be error at this stage of the proceedings.

Rather, viewing the allegations as true and in Dr. Anthony's favor, he plausibly alleges that one or all of those events occurred on or *around* March 16, 2023. (Doc. No. 16 ¶ 16). Because Dr. Anthony alleges that he told Meharry he passed Step 3 and reapplied for residency around March 16, 2023, the Court can plausibly infer that Meharry did not inform Dr. Anthony of its decision to not reinstate him in its residency program until on or after March 17, 2023. Because "the limitations period does not begin to run on a claim for employment discrimination until an employer makes and communicates a final decision to the employee[,]" and Dr. Anthony plausibly

alleges that Meharry did not make its decision on his re-application until March 17, 2023 or later, he has sufficiently alleged that conduct falls within the 300-day limitations period. United Parcel Serv., Inc., 249 F.3d at 561.

Accordingly, the Court finds that any of the alleged conduct conclusively occurring prior to March 17, 2023 is not actionable. Only the remaining alleged conduct that Dr. Anthony plausibly alleges occurred within the March 17, 2023 to January 11, 2024 window—Meharry's denial of Dr. Anthony's request for readmittance to the residency program, and Dr. Williamson's communications with Harlem Hospital—may serve as the bases for Dr. Anthony's ADA claims.

   2. Count I: Disability Discrimination

Having determined the proper scope of Dr. Anthony's ADA claims, the Court turns to Meharry's challenge to Count I, which alleges that Meharry discriminated against Dr. Anthony because of his disability. (Doc. No. 16 ¶¶ 25–30). To properly evaluate the parties' arguments on this claim, the Court must first define what it is. While Dr. Anthony does not state under what title of ADA he brings Count I, the allegations demonstrate Title I is most appropriate. (Id. ¶¶ 5–6 (citing to definitions of "employer" and "employee" under 42 U.S.C. §§ 12111(4) and (5)). The Court will therefore construe Count I as brought under Title I of the ADA.

"Title I of the ADA provides that a covered employer 'shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" Whitfield v. Tennessee, 639 F.3d 253, 258 (6th Cir. 2011) (quoting 42 U.S.C. § 12112(a)). To make a claim for employment discrimination under Title I, Dr. Anthony must sufficiently allege that "(1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) he

suffered an adverse employment action because of his disability."[5] Demyanovich v. Cadon Plating & Coatings, LLC, 747 F.3d 419, 433 (6th Cir. 2014) (citing Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1105 (6th Cir. 2008)). Meharry argues the first element of Dr. Anthony's Title I claim is deficient because the Amended Complaint makes no mention of what disability he suffers from that led to his purported discrimination. (Doc. No. 22 at 5). Dr. Anthony does not dispute this omission, but instead contends that the ongoing parallel litigation in this District between the parties makes one of his alleged disabilities, sleep apnea, "a known fact" and therefore imputed to this case. (Doc. No. 24 at 5–6).

While the Court appreciates that this is not the first time these parties have litigated against one another, Dr. Anthony's novel invocation of the facts and evidence of another case to support the allegations in the instant case does not save Dr. Anthony's otherwise blatantly deficient Title I claim. As demonstrated by Dr. Anthony's response, while he alleges that Meharry had awareness of Dr. Anthony's disability and discriminated against him because of it (Doc. No. 16 ¶¶ 7, 27), the Amended Complaint is silent on what exactly that disability is. The filings that Dr. Anthony cites to in his response to fill in that gap—all from another record in another case—cannot resolve this issue. Although those items are judicially noticeable and can be considered by the Court in ruling

---

[5] Rather than the three-part test cited to Demyanovich, Meharry cites to a five-part prima facie test for Dr. Anthony's Title I claim, under which he must also sufficiently allege that Meharry "knew or had reason to know of [his] disability" and "the position remained open while [Meharry] sought other applicants or [Dr. Anthony] was replaced." Keogh v. Concentra Health Servs., Inc., 752 F. App'x 316, 324 (6th Cir. 2018) (citation and quotations omitted). As Meharry acknowledges in its reply, it would be error for the Court to require Dr. Anthony satisfy the five steps in Keogh here, as those pertain to establishing a prima facie case under the McDonnell Douglas framework that is "error for the district court to require" at the pleading stage. Keys v. Humana, Inc., 684 F.3d 605, 609 (6th Cir. 2012) (holding it was error for a district court to require plaintiff to plead prima facie case to survive a motion to dismiss). Regardless, because Meharry only challenges the first element of Dr. Anthony's Title I claim that is shared under both the three- and five-part tests—whether he alleged he has a disability—the test applied here is of little import.

8

Case 3:24-cv-01252   Document 34   Filed 06/11/25   Page 8 of 12 PageID #: 132

on Meharry's motion, Armengau, 7 F. App'x at 344, they do nothing to inform the disability Dr. Anthony has that supports his Title I claim here, as Rule 12 requires Dr. Anthony to plausibly allege the facts constituting his claims in *this* action. See Blackwell, 979 F.3d at 524. To hold otherwise would subject Meharry to unfair surprise and prejudice because the Amended Complaint does not give it "fair notice of what [Dr. Anthony's] claim is and the grounds upon which it rests." Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994) (citation and quotations omitted).

Because Dr. Anthony provides only conclusory allegations of what disability he suffers from, he fails to sufficiently allege his Title I claim. Demyanovich, 747 F.3d at 433. Given this, Meharry's motion will be granted on this basis, and Count I will be dismissed.

### 3. Count II: Retaliation

Finally, the Court turns to Meharry's challenge to Count II, which alleges that Meharry retaliated against Dr. Anthony for filing complaints and litigation about its discriminatory conduct towards him. (Doc. No. 16 ¶¶ 31–35). Dr. Anthony brings his ADA retaliation claim under Title V, which states:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). To establish his ADA retaliation claim, Dr. Anthony must sufficiently plead that: "(1) [he] engaged in activity protected under the ADA; (2) [Meharry] knew of that activity; (3) [Meharry] took an adverse action against [Dr. Anthony]; and (4) there was a causal connection between the protected activity and the adverse action." Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing A.C. v. Shelby Cnty. Bd. of Educ., 711 F.3d 687, 697 (6th Cir. 2013)).

Meharry moves for dismissal of Count II on the basis that Dr. Anthony does not plead facts supporting the third element, that Meharry took an adverse action against Dr. Anthony.

Specifically, Meharry contends that Harlem Hospital's revocation of its interest in Dr. Anthony does not qualify as an adverse employment action. (Doc. No. 22 at 9). Dr. Anthony disagrees, arguing that allegation, along with those that Meharry did not reinstate him after passing Step 3 and that Dr. Williamson declined to provide him a reference letter, all serve as adverse actions taken by Meharry against Dr. Anthony that sufficiently demonstrate the third element of his ADA retaliation claim. (Doc. No. 24 at 10).

To properly evaluate the parties' arguments, the Court must further define what constitutes an adverse employment action for the purposes of Count II. To qualify as an adverse employment action supporting an ADA retaliation claim, Dr. Anthony must sufficiently plead a "materially adverse change in terms of the conditions of . . . employment because of [the] employer's conduct." Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996). This constitutes "any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 170 (2d Cir. 2024) (citation and quotations omitted). "Under this standard, a 'materially adverse' change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Mitchell v. Vanderbilt University, 389 F.3d 177, 182 (6th Cir. 2004) (quoting Kocsis, 97 F.3d 886)). Still, Title V is wide-ranging, and "covers a broader range of conduct than does the adverse-action standard for claims of discrimination." Sharikov, 103 F.4th at 170 (citation and quotations omitted).

With the foregoing standards in mind, the Court turns to the sufficiency of Dr. Anthony's various alleged adverse actions. As an initial matter, Dr. Anthony cannot base his Title V claim on Dr. Williamson failing to provide him a reference letter, as the Court has already found that this October 2021 conduct is time-barred. See supra, Section III.1. Further, the Court need not

10

Case 3:24-cv-01252   Document 34   Filed 06/11/25   Page 10 of 12 PageID #: 134

Specifically, Meharry contends that Harlem Hospital's revocation of its interest in Dr. Anthony does not qualify as an adverse employment action. (Doc. No. 22 at 9). Dr. Anthony disagrees, arguing that allegation, along with those that Meharry did not reinstate him after passing Step 3 and that Dr. Williamson declined to provide him a reference letter, all serve as adverse actions taken by Meharry against Dr. Anthony that sufficiently demonstrate the third element of his ADA retaliation claim. (Doc. No. 24 at 10).

To properly evaluate the parties' arguments, the Court must further define what constitutes an adverse employment action for the purposes of Count II. To qualify as an adverse employment action supporting an ADA retaliation claim, Dr. Anthony must sufficiently plead a "materially adverse change in terms of the conditions of . . . employment because of [the] employer's conduct." Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996). This constitutes "any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 170 (2d Cir. 2024) (citation and quotations omitted). "Under this standard, a 'materially adverse' change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Mitchell v. Vanderbilt University, 389 F.3d 177, 182 (6th Cir. 2004) (quoting Kocsis, 97 F.3d 886)). Still, Title V is wide-ranging, and "covers a broader range of conduct than does the adverse-action standard for claims of discrimination." Sharikov, 103 F.4th at 170 (citation and quotations omitted).

With the foregoing standards in mind, the Court turns to the sufficiency of Dr. Anthony's various alleged adverse actions. As an initial matter, Dr. Anthony cannot base his Title V claim on Dr. Williamson failing to provide him a reference letter, as the Court has already found that this October 2021 conduct is time-barred. See supra, Section III.1. Further, the Court need not

consider whether Dr. Anthony's allegations pertaining to Harlem Hospital constitute an adverse action, as his allegations on Meharry's rejection of his reapplication for residency control here.

Taking as true the facts alleged, Dr. Anthony has plausibly alleged that an employer, Meharry, refused to re-admit him into its residency program after he passed the Step 3 exam, despite having a practice of doing so for others who did not engage in protected activity. (Doc. No. 16 ¶¶ 11, 16–17). Dr. Anthony further alleges that Meharry rejected his application because he engaged in protected activity, filing lawsuits and EEOC charges against it. (Doc. No. 16 ¶ 32). On these facts, Dr. Anthony's Title V allegations amount to a failure-to-hire retaliation claim. While "claims of retaliation in the failure-to-hire context are . . . rare," they are not without any legal precedent. Velez v. Janssen Ortho, LLC, 467 F.3d 802, 803 (1st Cir. 2006). Given this precedent for such a claim, Dr. Anthony has plausibly alleged that Meharry brought "the official power of the enterprise to bear" on him by refusing to hire him as a resident, constituting a material change to his employment prospects that would not have otherwise occurred had he not engaged in protected activity. Burlington Industries v. Ellerth, 524 U.S. 742, 762 (1998); see id. at 761–62 ("[a] tangible employment action constitutes a significant change in employment status, such as *hiring*, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits") (emphasis added); see also Hall v. New York City Dep't of Educ., 2024 WL 4979288, at *12 (S.D.N.Y. Dec. 3, 2024) (holding plaintiff could bring a retaliatory failure-to-hire claim under Title V of the ADA); cf. Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998) (for Title VII failure-to-hire claims, a plaintiff must allege that he "applied for a specific position [] and was rejected therefrom"). Notably, Meharry does not dispute this in its reply. (See Doc. No. 27 at 4–5 (arguing only that the letter of

11

Case 3:24-cv-01252   Document 34   Filed 06/11/25   Page 11 of 12 PageID #: 135

recommendation refusal and Harlem Hospital communications did not constitute adverse actions)).

Because Dr. Anthony has sufficiently alleged Meharry engaged in an adverse employment action against him, Meharry's motion fails on this point. The Court will not consider Meharry's belated argument on reply that Dr. Anthony cannot establish causation for his Title V claim, as it has been waived. Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008) (the court should treat arguments in replies as waived when "the non-moving party [] has no right to respond"). Accordingly, Count II will remain pending.

## IV. CONCLUSION

For the foregoing reasons: Meharry's Motion to Dismiss (Doc. No. 21) will be granted on the time-barred actionable conduct occurring prior to March 17, 2023 and Count I, and will be denied on Count II; and Meharry's Motion to Strike (Doc. No. 25) will be denied. Further, pursuant to Rule 21, Dr. Williamson will be dismissed from this case *sua sponte*.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR
UNITED STATES DISTRICT JUDGE